Jane COE et al., Plaintiffs,

v.

F. David MATHEWS, Secretary of Health, Education and Welfare, Defendant.

Civ. A. No. 76-0794.

United States District Court, District of Columbia.

Nov. 23, 1976.

Thomas C. Reed, Neighborhood Legal Services Association, Pittsburgh, Pa., Local Counsel for plaintiffs Coe and Doe.

Norman R. McNulty, Jr., Spokane Legal Services, Spokane, Wash., for plaintiff Hoe.

Steven Brown, Greater Upstate Law Project, Rochester, N. Y., for plaintiff Moe.

Guy E. Sandler, Napa County Legal Aid, Napa, Cal., for plaintiff Poe.

Richard M. Burnham, Asst. Atty. Gen., Dept of Law, Juneau, Alaska, for the State of Alaska.

Steven J. Cole, Carolyn M. Heft, Howard L. Zwickel, NLSP Center on Social Welfare Policy and Law, Inc., New York City, Susan Freeman Schapiro, Florence Roisman, Washington, D.C., for plaintiffs.*

Rex E. Lee, Asst. Atty. Gen., Dept. of Justice, Earl J. Silbert, U.S. Atty., Raymond M. Larizza, Atty., Dept. of Justice, Civil Div., Washington, D.C., for defendant.

## MEMORANDUM AND ORDER

### I

CORCORAN, District Judge.

This case presents a complex question of statutory interpretation under the 1975 Child Support and Establishment of Paternity Amendments to Title IV of the Social Security Act (the Act), 42 U.S.C. § 601 *et seq.* Those amendments, in pertinent part, added a comprehensive new federal-state program for child support and the establishment of paternity at Title IV–D of the Act, 42 U.S.C. § 651 *et seq.*, and correspondingly amended provisions of the Aid to Families with Dependent Children (AFDC) program under Title IV–A, 42 U.S.C. § 601 *et seq.*

Plaintiffs are the National Welfare Rights Organization, the State of Alaska and five mothers of dependent children receiving assistance under the federally funded AFDC program. They commenced this action on May 7, 1976, seeking an order in the nature of mandamus directing the Secretary of Health, Education and Welfare (HEW) to issue, within twenty days, proposed standards to implement a statutory "good cause" exception for non-compliance with mandatory establishment of paternity, parental location and support provisions of the 1975 Amendments. In the alternative, the complaint requests declaratory and broad injunctive relief against the continued enforcement of existing HEW regulations until such time as standards pertaining to the good cause exception have become effective.

The plaintiffs have moved for summary judgment and the Secretary of HEW has filed a motion to dismiss, or in the alternative, for summary judgment.

### II

There is a maze of statutory interplay between the Title IV–A AFDC and Title IV–D Child Support and Establishment of Paternity provisions of the Act.

Under the Title IV–A AFDC program, which is optional with the states, the costs of providing assistance in the form of money payments because of death, continued absence, or mental or physical incapacity of parents are shared by the federal and state governments. Certain caretaker relatives of such children are also eligible for federally subsidized AFDC assistance. 42 U.S.C. § 606. The states are responsible for direct administration of their AFDC programs— state IV–A agencies, for example, make all eligibility determinations and set applicable need and payment standards. However, in order to qualify for substantial federal reimbursement of its AFDC expenditures, a state must operate its program under a state plan approved by the Secretary of HEW as meeting all applicable federal statutory and regulatory requirements. 42 U.S.C. § 602(b).

The primary responsibility for "enforcing the support obligations owed by absent parents to their children, locating absent parents, establishing paternity and obtaining child support" under the new Title IV–D Child Support and Establishment of Paternity program rests with a single and separate state organizational unit, the state IV–D agency, 42 U.S.C. § 651. Such Title IV–D agency carries out those functions under a state plan for child support which must meet all of the requirements of section 454 of the Act, 42 U.S.C. § 654, and implementing federal regulations. Once its

---

* Indicates principal counsel.

Title IV–D plan is approved by the Secretary, the state becomes eligible for reimbursement by the federal government of seventy-five percent of the expenditures made under that plan. In addition to review and approval of state child support plans, 42 U.S.C. § 652(a)(3), the Secretary's responsibilities under Title IV–D include, inter alia, providing technical assistance to state IV–D agencies, periodically evaluating and auditing state child support programs, maintaining records of amounts collected by the states and reporting to Congress on the effectiveness of state child support activities. See 42 U.S.C. § 652 (a). Section 652 (a)(1) further directs the Secretary of HEW to "establish such standards for State programs . . . as he determines to be necessary to assure that such programs will be effective."

The specific statutory provisions of Title IV–A and Title IV–D which are at issue in the present case appear at 42 U.S.C. § 602(a)(26)(B) and § 654(4). Section 654(4) requires that state IV–D agencies must undertake to establish the paternity of each child born out of wedlock on whose behalf assistance is claimed under the Title IV–A AFDC program, and to locate the absent parents (or other persons legally liable for support) of the AFDC children, and to obtain any support payments due to the children or their caretaker relatives. Section 602(a)(26)(B) of Title 42 mandates that state agencies administering AFDC programs under Title IV–A of the Act condition the eligibility for assistance of an AFDC applicant or recipient upon his or her cooperation with the state in the establishment of paternity, location and support efforts.

However, sections 654(4) and 602(a)(26)(B) permit Title IV–A and Title IV–D state agencies, respectively, to excuse the cooperation of an AFDC recipient or applicant, and to forego the establishment of paternity and parent-location and collection of support owed to an AFDC household upon a finding by the state Title IV–A agency that good cause exists for such an exception. It is further specified that such finding is to be made "in accordance with standards prescribed by the Secretary [of HEW]" pursuant to section 602(a)(26)(B), "which standards shall take into consideration the best interests of the child on whose behalf aid is claimed", 42 U.S.C. §§ 602(a)(26)(B), 654(4).[1]

Standards relating to the good cause exception of sections 602(a)(26)(B) and 654(4) have been published in proposed form;[2] and, on November 21, 1975, the Office of Child Support Enforcement, HEW, advised participating states through the Agency's regional offices that state IV–A and IV–D agencies should "utilize care and common sense in administering its program so that children and their custodial parents or caretaker relatives will not be harmed by the support enforcement process."[3] Nonetheless, the only standards for excusing compliance to have been actually and formally incorporated to date in HEW regulations are limited to situations involving incest, forceable rape, or adoption where "in the opinion of the IV–D agency, it would not be in the best interests of the child" to undertake the establishment of paternity. 45 C.F.R. § 303.5(b).

### III

Subsequent to the filing of plaintiffs' summary judgment motion, certain action

---

1. The challenged HEW regulations, which implement the mandatory provisions of the above-cited statutory sections, appear at 45 C.F.R. § 232.12 (Cooperation in obtaining support), § 302.31 (Establishing paternity and securing support), § 303.3 (Location of absent parents), § 303.4 (Establishment of support obligations), § 303.5 (Establishment of paternity), and § 303.6 (Enforcement of support obligations).

2. See discussion at n. 4, infra.

3. Memorandum from the Acting Director, OCSE, to the Acting Regional Director, OCSE, November 21, 1975 (Affidavit of Louis B. Hays, Attachment 1); see also Letter from the Deputy Director, OCSE, to the Attorney General of Alaska, April 8, 1976 (Id., Attachment 2); Letter from Assistant U.S. Attorney, Phoenix, Arizona, to the Assistant Attorney General, Arizona, March 29, 1976 (Id., Attachment 3).

taken by the Secretary of HEW has rendered the mandamus aspects of this litigation moot.[4] Accordingly, the narrow question remaining before the Court is whether defendant's present regulations, which implement the mandatory provisions but not the good cause exception of sections 602(a)(26)(B) and 654(4), are inconsistent with the underlying statutory authority of Title IV of the Act.

### IV

Mandatory provisions of the statutory sections at issue in the present case originated in the Social Services Amendments of 1974 which were signed into law by President Ford on January 4, 1975. P.L. 93–647, 88 Stat. 2337, H.R. 17045 (93rd Cong. 2d Sess.).

Among a number of changes in existing law effected by P.L. 93–647, section 101(a) created a new Part D of Title IV of the Social Security Act, establishing a comprehensive federal-state "Child Support and Establishment of Paternity Program." The Title IV–D provisions included, at section 654(4) [section 454(4) of the Act], a requirement that state plans for child support must provide that such states will undertake:

(A) in the case of a child born out of wedlock with respect to whom an assignment under section 402(a)(26) of this title is effective, to establish the paternity of such child, and

(B) in the case of any child with respect to whom such assignment is effective, to secure support for such child from his parent (or from any other person legally liable for such support), utilizing any reciprocal arrangements adopted with other States, except that when such arrangements and other means have proven ineffective, the State may utilize the Federal courts to obtain or enforce court orders for support.

Amending the AFDC provisions of Title IV–A of the Social Security Act, P.L. 93–647, § 101(c)(5) included a new section 602(a)(26) [section 402(a)(26) of the Act] which mandated that a state AFDC plan must provide that, as a condition of eligibility for aid, each applicant or recipient will be required

(B) to cooperate with the State (i) in establishing the paternity of a child born out of wedlock with respect to whom aid is claimed, and (ii) in obtaining support payments for such applicant and for a child with respect to whom such aid is claimed, or in obtaining any other payments or property due such applicant or such child that, if the relative with whom a child is living is found to be ineligible because of failure to comply with the requirements of subparagraphs (A) and (B) of this paragraph, any aid for which such child is eligible will be provided in the form of protective payments as described in section 406(b)(2) (without regard to subparagraphs (A) through (E) of such section).

Neither section 654(4) nor section 602(a)(26) as enacted in P.L. 93–647 recognized exceptions to their mandatory cooperation requirements.

The final provision of P.L. 93–647 which is pertinent to our consideration stated that the amendments made by section 101 (e.g., including 654(4) of Title IV–D and 602(a)(26)(B) of Title IV–A), with certain exceptions not here relevant, "shall become effective on July 1, 1975". P.L. 93–647, § 101(f).

Approximately two months in advance of P.L. 93–647's July 1 effective date, HEW published proposed regulations to implement the Title IV–D Child Support and Title IV–A AFDC amendments. 40 Fed. Reg. 19207–8 (May 2, 1975); 40 Fed. Reg. 20096–20105 (May 8, 1975). These regula-

---

4. On August 6, 1976, the acting Secretary of HEW issued a notice of proposed rule making detailing standards for the so-called good cause exception. That notice was published for public information and comment in the Federal Register of August 13, 1976. 41 Fed. Reg.

34298–99. In accordance with section 208(d) of Public Law 94–88, 89 Stat. 436, a report on the proposed standards was submitted to Congress on August 6, 1976. *But see* 11 Pres. Doc. no. 33, p. 856.

tions, which were also scheduled to take effect on July 1, 1975, were published in final form in the Federal Register of June 26, 1975. 40 Fed. Reg. 27155, 27160, 27165.

On June 26, 1975, however, Congress acted to postpone the effective date of section 101 of P.L. 93–647 for one month, "[w]hen it became obvious just prior to July 1 that there were certain technical problems in the bill which had to be resolved before it could work satisfactorily."[5] See P.L. 94–46, 89 Stat. 245, H.R. 7709 (94th Cong. 1st Sess.). In accordance with that change, HEW amended the effective date of its regulations to coincide with the revised effective date of the Title IV–A and IV–D amendments. See 40 Fed. Reg. 31766 (July 28, 1976).

Finally, on August 1, 1975, the date upon which P.L. 93–647's Child Support and AFDC amendments and HEW's implementing regulations became effective, Congress passed P.L. 94–88, 89 Stat. 433, H.R. 7710 (94th Cong. 1st Sess.), an act relating to tariff treatment of watches and watch movements, which included a nongermane amendment that made several important changes in the Child Support and AFDC Amendments of P.L. 93–647. Only three of those modifications relate to the question presently before the Court.

First, P.L. 94–88 amended sections 654(4) and 602(a)(26)(B) of Title IV as enacted in P.L. 93–647, providing for the first time an exception to their mandatory establishment of paternity, location and support requirements provisions where there is "good cause" for non-compliance, as determined by the state IV–A agency,

in accordance with standards prescribed by the Secretary [of HEW], which standards shall take into consideration the best interests of the child on whose behalf aid is claimed (emphasis supplied). P.L. 94–88, Title II, § 208 (a)–(c).

Second, section 208(d)(1) of P.L. 94–88 requires that the "standards prescribed by the Secretary" relating to the good cause exception must be submitted to Congress and that

[s]uch standards shall take effect at the end of the period which ends 60 days after such proposed standards are so submitted to such committees unless, within such period, either House of the Congress, adopts a resolution of disapproval.

And finally, section 101(f) of P.L. 93–647, as amended by P.L. 94–46, which stated, in pertinent part, that the Title IV–A and IV–D amendments "shall become effective on August 1, 1975," was further amended by section 210 of P.L. 94–88 which provides

The amendments made by this title [P.L. 94–88, Title II] shall, unless otherwise specified therein, become effective August 1, 1975. (Emphasis supplied.)

## V

■ The parties in this litigation are in basic agreement, and we think it clear beyond peradventure that the statutory good cause exception of sections 602(a)(26)(B) and 654(4), by its terms, is not a self-implementing provision. The language of those sections clearly states that invocation of the exception by AFDC applicants or recipients and determinations of eligibility by state IV–A agencies are contingent upon the terms of HEW standards defining the exception's scope.

■ Plaintiffs, nonetheless, insist that the only reasonable interpretation of those sections is one which nullifies their mandatory cooperation requirements in the absence of standards implementing the good cause exception. We disagree.

The rule-making procedures relating to good cause standards which are contemplated by P.L. 94–88 necessarily entail an hiatus between the date of enactment, August 1, 1975, and the final adoption of such standards. Under pertinent provisions of the Administrative Procedure Act (APA), 5 U.S.C. § 553, notice of the proposed standards must be published in the Federal

5. H.R. Rept. No. 94–368, H.R. Comm. on Ways and Means, July 17, 1975 (94th Cong. 1st Sess.) at 3.

Register and an opportunity given for public comment. After HEW has considered relevant matters submitted by the public and, if appropriate, modified its standards, the good cause standards must be published in final form not less than 30 days prior to their effective date. Then, in accordance with section 208(d)(1) of P.L. 94–88, the Agency is required to submit its standards to Congress and they "shall take effect at the end of the period which ends 60 days after" their submission, "unless, within such period, either House of Congress, adopts a resolution of disapproval." Should such a unicameral veto be exercised, of course, the entire rule-making process would begin anew.

The language of sections 602(a)(26)(B) and 654(4), read in conjunction with procedures mandated under the APA and P.L. 94–88, § 208(d)(1), reveals Congress' desire to maintain a degree of executive and legislative control over the good cause exception which is antithetical to an effective date of August 1, 1975, for that exception.

In recognition of this fact, Congress specified that P.L. 94–88's Title IV amendments, which included the good cause exception, would become effective on August 1, 1975, "unless otherwise specified therein."

Notwithstanding the general effective date of August 1, 1975, made applicable to, *inter alia*, the mandatory cooperation provisions of sections 602(a)(26)(B) and 654(4) by P.L. 93–647, as amended by P.L. 94–46, the Court is of the opinion that the effective date of the good cause exception was "otherwise specified" by the terms of P.L. 94–88 to be that date upon which HEW's standards, promulgated in accordance with procedures discussed above, have become effective.[6]

Consequently, we find that HEW's existing regulations are not inconsistent with the statutory authority of Title IV of the Act.

## VI

### ORDER

On the basis of the foregoing, it is, by the Court this 23rd day of November, 1976,

ORDERED, that plaintiffs' motion for summary judgment should be, and the same is hereby, denied. And it is further

ORDERED, that defendant's motion for summary judgment should be, and the same is hereby, granted.

---

**6.** Although our decision is based upon the language and contextual development of the Title IV amendments, the legislative history of P.L. 94–88 further demonstrates that plaintiffs' interpretation of sections 602(a)(26)(B) and 654(4) is unsound. The Congressional debates on S. 7710, later enacted as P.L. 94–88, reflect a keen awareness that the mandatory provisions of those sections (as enacted in P.L. 93–647) and HEW's implementing regulations became effective on the same date that P.L. 94–88 was considered and passed. And, more importantly, those debates reaffirm the legislative intent that the previously enacted provisions of P.L. 93–647, as amended by P.L. 94–46, *should* take effect on August 1, 1975. (*See* 121 Cong. Rec. S. 14921–14924, H. 8155–8157, Aug. 1, 1975). Were the Court to accept plaintiffs' interpretation that the mandatory provisions of sections 602(a)(26)(B) and 654(4) are null in the absence of HEW's good cause standards, the August 1, 1975, general effective date would be read out of the statute and that clear Congressional purpose ignored.